IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brett James Catoe, #296942, ) | CIVIL ACTION NO. 9:12-3144-JFA-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Thomas E. Byrnes and John Pate, Warden ) | |
| of Allendale Correctional Institute, ) | |
| ) | |
| Defendants. ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on June 14, 2013. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on June 26, 2013, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motions may be granted, thereby ending his case. Plaintiff responded by filing both a response and his own motion for summary judgment on July 1, 2013, following which the Defendants filed a response in opposition to the Plaintiff's motion for summary judgment on July 17, 2013.



These motions are now before the Court for disposition.[1]

## **Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that on October 5, 2012 he went to sick call because he was having bad headaches. Plaintiff alleges that the Nurse (a "Ms. Jones") checked inside his ears and told him it looked like he had some excess wax build up that was probably causing his headaches. Plaintiff was referred to the doctor, and he was thereafter seen by the Defendant Dr. Byrnes. Dr. Byrnes was assisted by Nurse "Huddle". Plaintiff alleges that Dr. Byrnes proceeded to work on his ears with some metal tweezers, even though he told Dr. Byrnes that all he wanted was some eardrops. Plaintiff alleges that during this procedure, Dr. Byrnes stuck the tweezers too far into his left ear, at which time Plaintiff heard a loud "pop" and it "hurt real bad". Plaintiff alleges that the left side of this throat and around his ear were swollen for about an hour after Dr. Byrnes' procedure.

Plaintiff alleges that prior to this procedure, he had no problems with his ear, but that now he cannot hear out of his left ear. Plaintiff alleges that after this procedure, he was given ear drops, and that when he awoke the next day he had blood on his pillow. Plaintiff alleges he went back to sick call on October 12, 2012, after he had been taken to medical on the previous day during which a nurse had tried to rinse out his ear. Plaintiff alleges that when he went to sick call on the 12th, Nurse "Jones" checked his ear and told him it was infected and looked damaged. Jones then placed Plaintiff on an antibiotic and pain medication. Plaintiff alleges that ever since this incident,

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. All parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

he cannot hear anything out of his left ear, and the whole left side of his head hurts. Plaintiff seeks monetary damages for an alleged violation of his constitutional rights. See generally, Verified Complaint; see also Court Docket No. 20 (clarifying that Plaintiff is asserting a constitutional claim).

In support of summary judgment in the case, the Defendant Thomas Byrne (correct spelling) has submitted an affidavit wherein he attests that he is a physician currently employed by the SCDC to render medical care to inmates. Byrne attest that he was the primary care physician for the Plaintiff while he was incarcerated at the Allendale Correctional Institution, and Byrne has attached a copy of Plaintiff's medical records as an exhibit to his affidavit.

Byrne attests that he first encountered the Plaintiff when he reported to sick call on September 7, 2012 for complaints of a headache and pain in his lower back. Plaintiff returned on October 5, 2012 complaining of headaches and ear pain. Byrne attests that Plaintiff was examined by Nurse Jones, who observed a "large white mass" deep in Plaintiff's left ear canal. Plaintiff advised Nurse Jones that he had put toilet paper in his ears to clean them. Nurse Jones also observed scar tissue bilaterally on the tympanic membrane. Byrne attests that he had previously given Plaintiff ear wax drops to deal with any build up in his ear that may have been bothering him, and he was again given ear wax drops to use for five (5) days.

Byrne attests that Plaintiff was brought to the doctors clinic for an inner ear irrigation on October 11, 2012. Byrne attests that he attempted to flush Plaintiff's ear with peroxide and warm water, but the irrigation was not successful and the toilet paper found in Plaintiff's ear would not come out. Dr. Byrne attests that he then used "hemostats" to see if he could manually remove any obstruction, at which time Plaintiff jumped away from him and said that Dr. Byrne had poked his ear. Byrne attests that Plaintiff claimed to have heard a loud pop, although at no time did he believe that



he had perforated Plaintiff's ear drum, and he never saw any signs of any perforation. The following

day Nurse Jones noted a purulent drainage from Plaintiff's left ear, and after postponement of an

appointment due to an institutional lock down, Dr. Byrne examined Plaintiff's ears on October 17,

2012, planning to do another irrigation. Dr. Byrne attests that Plaintiff's tympanic membrane was

intact, although some unidentified particulate matter was present. Byrne attests that Plaintiff had his

ear irrigated again, which was tolerated well by the Plaintiff and no foreign mass was noted. Plaintiff

thereafter returned to the doctor's clinic on October 23, 2012, claiming that he could not hear out of

his left ear, but Dr. Byrne attests that upon examination there was no drainage from the ear and the

tympanic membrane was intact. Plaintiff again returned to sick call on October 31, 2012, claiming

that he could not hear out of his left ear. The nurse noted that Plaintiff had toilet paper in his ear that

he had put in his ear himself recently, and made a notation that there was an infection in both ears

because she could not see the back of the tympanic membranes. Dr. Byrne attests, however, that in

his opinion the nurse mistook the fact that she could not observe the tympanic membranes for

infections, when in fact Plaintiff had again placed foreign objects in his ears.

Dr. Byrne attests that the final time he saw the Plaintiff for his ear complaints was on

November 6, 2012, at which time Plaintiff again presented complaining that he could not hear out

of his left ear. Dr. Byrne attests that upon examination he noted no redness, exudates, or foreign

bodies in the ear canal, and that in his opinion the history of Plaintiff's ailment and his examinations

were not consistent with Plaintiff's claim that he could not hear at all from his left ear. Dr. Byrne

attests that there is no evidence of any perforation to Plaintiff's ear or any objective evidence of

hearing loss, and that in his medical opinion Plaintiff's ear looks normal and healthy. Dr. Byrne

attests that Plaintiff thereafter returned to sick call at various times for other complaints, such as itchy



4

skin, dry eyes, and headaches, but did not return on the subject of his hearing or ears. Dr. Byrne attests that, in his opinion to a reasonable degree of medical certainly, most probably that Plaintiff was treated with the proper standard of medical care at all times during his incarceration at ACI. See generally, Byrne Affidavit, with attached exhibit [medical records].

In addition to Dr. Byrne's affidavit and attached medical records, Defendants have attached copies of Plaintiff's grievance documents.

In opposition to the Defendants' motion for summary judgment and in support of his own motion for summary judgment, Plaintiff has also submitted copies of his grievance documents, a Request to Staff Member form dated May 19, 2013, and what purports to be a statement from another inmate, James Byers, who was apparently Plaintiff's cell mate. This statement from Byers consists largely of inadmissible heresay, and in any event is not notarized, and has therefore not been considered by the Court.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see



Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence present, the undersigned concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

First, although listed as a Defendant in the caption of Plaintiff's Complaint, Plaintiff has made no factual allegations whatsoever concerning John Pate, who is alleged to be the Warden of the Allendale Correctional Institution. Therefore, Pate is entitled to dismissal as a party Defendant in this case. Gomez v. Toledo, 446 U.S. 635, 640 (1980)[In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege, inter alia, that a named defendant deprived him or her of a federal right under color of state law]; see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999)["Liability . . . must be based on the personal involvement of the Defendant"], cert denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Il. 1996); Horton v. Marovich, 925 F.Supp. 540 (N.D.Il. 1996)["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].

With respect to the remaining Defendant Dr. Byrne, in order to proceed with his claim for denial of medical care as a constitutional violation, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether Dr. Byrne was deliberately indifferent to his serious



6

medical needs.[3] Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. To the contrary, the evidence before the Court shows that Plaintiff received continuous and ongoing treatment for his medical complaints. Plaintiff was seen regularly (not just for the medical complaint alleged in this lawsuit, but for various other medical problems) by nurses as well as Dr. Byrne, and Plaintiff's medical records (attached to Dr. Byrne's affidavit) confirm the sworn statements of Dr. Byrne in his affidavit as to the care and treatment Plaintiff received. Dr. Byrne further attests, as a medical doctor, that the treatment Plaintiff received was proper, and while it is readily apparent from the medical evidence that Plaintiff did suffer from ear problems during the relevant time period, there is no evidence that Dr. Byrne or any other medical professional was *deliberately indifferent* to this condition or to Plaintiff's complaints. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997)["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to

---

[3]Dr. Byrne also asserts entitlement to summary judgment based on Plaintiff's failure to exhaust his administrative remedies. However, the Defendants themselves have submitted copies of Plaintiff's grievance documents, which contain both a Step 1 and Step 2 Grievance form, and although Defendants contend that Plaintiff's Step 2 Grievance form (which otherwise would have exhausted his administrative remedy procedures) was not properly submitted, Plaintiff contends that it was the Defendants who failed to properly process his Step 2 Grievance Appeal. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; cf. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004). In any event, even if there is a genuine issue of fact as to whether Plaintiff properly pursued and exhausted the prison grievance process, and summary judgment for the Defendants on that ground is not warranted on that basis, Plaintiff's claim fails on its merits.

maintain claim].

In support of summary judgment in this case, and in opposition to Plaintiff's motion for summary judgment, the Defendants have provided an affidavit from a licensed physician attesting to the extent, nature and quality of the medical care Plaintiff has received, and have also provided Plaintiff's medical records detailing this medical history and which are consistent with the statements in Dr. Byrne's affidavit. In contrast to this *medical evidence*, Plaintiff has presented no evidence to show that Dr. Byrne was deliberately indifferent to his medical needs. Plaintiff's own personal lay opinion that his care was inadequate or improper is not by itself sufficient to avoid summary judgment. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]. Hence, while Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence which refute his claims. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than



attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

Plaintiff may, of course, pursue a claim in state court if he believes Dr. Byrne committed medical malpractice in the care and treatment he provided; however, that is not the issue before this Court. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether Dr. Byrne was deliberately indifferent to Plaintiff's serious medical needs, the standard for a constitutional claim, and Plaintiff's federal § 1983 medical claim should therefore be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## Conclusion

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that the Defendants' motions for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

August 2, 2013
Charleston, South Carolina

Bristow Marchant
United States Magistrate Judge

9

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

